UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RYAN NEAL EDENBURN,

    Defendant.

_____/

Case No. 22-20463

Hon. F. Kay Behm
United States District Judge

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO VACATE SENTENCE (ECF No. 49)**

Appearing pro se, Defendant Ryan Edenburn moves to vacate his sentence pursuant to 28 U.S.C. § 2255. For the reasons explained below, Defendant's motion is denied.

I.     **Factual Background**

On August 1, 2022, local law enforcement initiated a traffic stop on a vehicle after observing the driver, who was not wearing a seat belt, veer into the left lane without signaling. The driver of the vehicle began to drive erratically, jumping the curb multiple times and crossing onto oncoming traffic. As the vehicle came to a stop, officers observed

-1-

the driver throw something out the window. The driver was taken into custody and identified as Edenburn. Officers recovered the two objects Edenburn had thrown out the window: a cylinder containing 5.88 grams of methamphetamine, and a loaded .40 caliber pistol. The gun was printed on a 3D printer; these are commonly referred to as "ghost guns" because their sale and ownership is difficult to track. Upon searching Edenburn's vehicle, officers located .40 and .38 caliber ammunition, 11.56 grams of psilocybin mushrooms, a digital scale, and 15 Suboxone strips. At the time of this incident, Edenburn was on parole for a state offense and was detained for the parole violation.

Edenburn's criminal history includes offenses involving narcotics, firearms, and parole violations. *See* ECF No. 46 (presentence report). In the span of 20 years, he had six convictions involving narcotics possession and multiple firearms convictions. In 2006, Edenburn was convicted of possession of methamphetamine, felon in possession of a firearm, and felony firearm. While on parole in February 2013, a compliance check by probation revealed that he was in possession of three firearms, one of which was stolen. In April of 2013, Edenburn had brass knuckles and narcotics on his person when he was picked up for

shoplifting Sudafed and batteries from Meijer. He pleaded guilty to weapons charges in February of 2015 for both the February and April 2013 offenses and was sentenced to five years in custody. He was released in November of 2021 and committed the instant offense while on parole.

In December 2023, Edenburn pleaded guilty to Count 3 (possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)) and Count 4 (felon-in-possession of ammunition under 18 U.S.C. § 922(g)) of the indictment. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the government agreed to recommend a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a) and an additional one-level reduction under § 3E.1.1(b) if the court calculated Edenburn's offense level at 16 or greater. For the firearm-possession count, the parties agreed to recommend a base offense level of 14 under USSG § 2K2.1(a)(6)(A), and the government agreed to recommend a sentence at the middle of the guidelines range determined by the court.

As part of the agreement, Edenburn waived the right to appeal his conviction or his sentence, so long as his sentence did not exceed the top

of the guidelines range determined by the district court. He also waived his right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255, except with respect to claims of prosecutorial misconduct and ineffective assistance of counsel. This court conducted a plea hearing and accepted Edenburn's guilty plea.

The probation officer prepared a presentence report. ECF No. 46. For the firearm-possession count, the report noted that, pursuant to USSG § 2K2.4, the guideline sentence was the statutory minimum of 60 months' imprisonment. *See* 18 U.S.C. § 924(c)(1)(A)(i). For the felon-in-possession count, the report applied a base offense level of 14, pursuant to USSG § 2K2.1, because Edenburn had previously been convicted of felonies for which he had been sentenced to more than one year of incarceration. The report applied a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a), to arrive at a total offense level of 12. That total offense level and Edenburn's criminal history category of VI resulted in a guidelines imprisonment range of 30 to 37 months for the felon-in-possession conviction. Neither party objected to the report's calculations.

At the sentencing hearing, the district court adopted the presentence report's guidelines calculation. ECF No. 57 at PageID.332. The court sentenced Edenburn to the mandatory minimum of 60 months of imprisonment on Count 3, to be served consecutively to a 30-month term on Count 4 and his undischarged parole violations. *Id.* at PageID.342.

Edenburn appealed his conviction. On appeal, his attorney filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that he examined the record and did not find any non-frivolous grounds for appeal. The Sixth Circuit Court of Appeals concluded that Edenburn entered into a valid guilty plea and that he knowingly and voluntarily waived his right to appeal his conviction and sentence. ECF No. 58.

On June 10, 2024, Edenburn filed a timely motion to vacate his sentence pursuant to 28 U.S.C. § 2255.[1] He argues that he received ineffective assistance of counsel based upon three grounds: (1) his attorney failed to file a motion under *Bruen*; (2) his attorney did not present his programs that he had completed before sentencing, letters

---

[1] The motion was held in abeyance while Edenburn's appeal was pending.

of support from his family, and proof of his employment; and (3) his attorney failed to argue that he should be credited for the 22 months he served before he was sentenced. ECF No. 49, PageID.275.

## II. Legal Analysis

### A. Ineffective Assistance of Counsel Standard

Edenburn contends that his counsel, Barry A. Wolf, was ineffective during sentencing. To present an ineffective assistance of counsel claim under 28 U.S.C. § 2255, Defendant must show that (1) his attorney's performance was seriously deficient and (2) this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show that counsel's performance was deficient, Defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688. In applying this standard, "a court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 695.

Counsel's deficiency results in prejudice if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To satisfy the prejudice requirement in the context of sentencing, a defendant must show that counsel's errors resulted in a longer sentence than would otherwise have been imposed. *See Glover v. United States*, 531 U.S. 198, 204 (2001); *Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015) ("An attorney's failure to object to an error in the court's guidelines calculation that results in a longer sentence for the defendant can demonstrate constitutionally ineffective performance.").

## B. Application

Edenburn's first ineffective assistance of counsel claim concerns Mr. Wolf's failure to file a "*Bruen* motion" with respect to Count 4 (felon in possession of ammunition). *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Although Edenburn does not develop this argument, the court presumes that he faults his lawyer for failing to challenge the constitutionality of the statute of conviction, § 922(g)(1), under the Second Amendment. Such a motion would be unavailing, however. "[O]ur nation's history and tradition demonstrate

-7-

that Congress may disarm individuals they believe are dangerous. Section 922(g)(1) is an attempt to do just that. Because . . . most applications of § 922(g)(1) are constitutional, the provision is not susceptible to a facial challenge." *United States v. Williams*, 113 F. 4th 637, 657 (6th Cir. 2024). To the extent Edenburn challenges the statute "as applied" to him, he has the burden of demonstrating that he is "not dangerous, and thus falls outside of § 922(g)(1)'s constitutionally permissible scope." *Id.* Edenburn fails to argue that he is not dangerous, and his criminal history demonstrates otherwise. At sentencing, the court specifically found that Edenburn engaged in behavior that created a danger to the community. ECF No. 57 at PageID.338.

Under the circumstances, a *Bruen* motion would not have been successful; Edenburn's attorney was not ineffective for failing to raise a meritless issue. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir.), *cert. denied*, 571 U.S. 992 (2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

Next, Edenburn alleges that Mr. Wolf failed to argue that Edenburn should have been credited for the 22 months he served with the Michigan Department of Corrections prior to sentencing. Defendant

-8-

does not explain how his lawyer's performance was deficient in this regard. *See Elzy v. United States*, 205 F.3d 882, 885-86 (6th Cir. 2000) (finding that conclusory allegations are "wholly insufficient to raise the issue of ineffective assistance of counsel").

Indeed, as the government notes, the record shows that Mr. Wolf brought to the court's attention that Edenburn served 22 months in state custody prior to being sentenced in federal court. At sentencing, Mr. Wolf said, "I'd really like to emphasize what I put in the sentencing memorandum. Mr. Edenburn has been sitting for 22 months, and, and none of this time is counted towards his federal sentence." ECF No. 57, PageID.333. Mr. Wolf expressly asked the court "to consider this time when fashioning the balance of his sentence." ECF No. 43 at PageID.191. It is unclear what else Defendant believes Mr. Wolf should have done, particularly since the law is clear that Edenburn is not entitled to credit towards his federal sentence for time spent in state custody on a state charge. 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward [his] term of imprisonment for any time he has spent in official detention prior to the date the sentence commences," if such time "has not been credited against another sentence.").

Lastly, Edenburn contends that Mr. Wolf failed to present all the programs and classes he completed prior to sentencing; failed to submit supporting letters from his family; and failed to present his post-incarceration employment. Edenburn suggests that this information "could have resulted in a downward departure." ECF No. 49 at PageID.276. Mr. Wolf did submit, however, several course certificates and a letter from Edenburn's employer, who stated he would be "glad to have him back at work with us." ECF No. 44. Edenburn does not elaborate regarding what the additional supporting materials would have shown. He also does not explain how the inclusion of this additional information would have altered the court's sentencing decision or resulted in a more favorable outcome, particularly in light of the nature of his offense, his criminal history, and the need to protect the public. ECF No. 57 at PageID.337-41. He received the mandatory minimum sentence for Count 3 and a sentence on the low end of the guidelines for Count 4. His suggestion that additional information would have resulted in a downward departure is speculative. As the court explained at sentencing, "I don't believe there [are] any factors that warrant departure. . . . I don't believe a shorter time period is

appropriate here, given your actions and the danger that you present to the community." *Id.* Without a showing that, but for counsel's alleged errors, he would have received a more favorable sentence, Edenburn fails to satisfy the prejudice prong of the *Strickland* analysis.

## III. <u>Conclusion</u>

In sum, Edenburn has presented only conclusory, skeletal arguments that are insufficient to show that his counsel's performance was deficient or prejudiced his defense. *See Elzy*, 205 F.3d at 885-86 (finding that conclusory allegations are "wholly insufficient to raise the issue of ineffective assistance of counsel"). Under the circumstances, an evidentiary hearing is not required. *See Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996) (citing *Fontaine v. United States*, 411 U.S. 213, 215 (1973)) ("[E]videntiary hearings are not required when, as here, the record conclusively shows that the petitioner is entitled to no relief.").

The court also declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1). A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). This requires a "showing

that reasonable jurists could debate whether" the court should have granted relief. *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The court finds that the merits of Edenburn's ineffective assistance of counsel claim are not reasonably debatable, for the reasons explained above.

It is **ORDERED** that Edenburn's motion to vacate sentence (ECF No. 49) is **DENIED**.

**SO ORDERED.**

Dated:  August 14, 2025         s/F. Kay Behm
                                F. Kay Behm
                                United States District Judge